UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DESIREE YAGAN,

                                        Plaintiff,

        v.                                              5:10-CV-528
                                                        (NPM/ATB)

JUDGE STEPHEN DOUGHERTY,
JUDGE KEVIN YOUNG, et al.,

                                        Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


DESIREE YAGEN
Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

        The Clerk has sent the above civil rights complaint and related submissions to me for my review.  On May 5, 2010, *pro se* plaintiff, Desiree Yagan, filed this action, seeking declaratory and injunctive relief under 42 U.S.C. § 1983. (Dkt. No. 1).  In her complaint, she also requests a "Three Judge Court," pursuant to 28 U.S.C. § 2284. *Id.* Plaintiff has filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2).  At the bottom of pages one through eight of the complaint, plaintiff indicates that this is a "Complaint seeking federal intervention into state courts." (Compl. at 1-8).

        On May 18, 2010, plaintiff filed what she has labeled an "Emergency Motion for Declaratory and Injunctive Relief/Ex Parte Temporary Restraining Order." (Dkt. No. 3).  In her "motion," plaintiff added two defendants and a variety of new factual statements from an incident that occurred between May 11, 2010, and May 14, 2010. (Dkt. No. 3).  On May 21, 2010, plaintiff returned to the Clerk's Office and filed a

"Supplement" in support of her motion for a Temporary Restraining Order." (Dkt. No. 5). On May 24, 2010, plaintiff filed an additional "Supplement" in support of her application for a Temporary Restraining Order and a "Notice of Removal from State Court." (Dkt. No. 6). On May 28, 2010, plaintiff returned to the Clerk's Office to file another "Ex Parte Emergency Motion for [a] Temporary Restraining Order," including a defendant not named in the original complaint or added in her "Ex Parte" Temporary Restraining Order ("TRO") motion of May 18, 2010. (Dkt. No. 7).

On June 3 and 4, 2010, plaintiff filed two "Emergency Motions" for a TRO, and, later in the day on June 4, 2010, plaintiff filed a "Supplement" to her June 4, 2010 motion for a TRO. (Dkt. No. 10). On June 7, 2010, plaintiff filed another motion for a TRO, due to the alleged theft of her rolling briefcase. (Dkt. No. 12).

I.    **Background**

Once again, plaintiff is attempting to sue various judges of the New York State Court System. Plaintiff names Judge Stephen Dougherty; Judge Kevin Young; Judge Jeffery Merrill; Judge Jack Schultz; Judge David Gideon; and Judge James Tormey. (Compl. at 1). Plaintiff also names Onondaga County District Attorney William Fitzpatrick and J. Patrick Barrett, "Administrative Law Judge Fifth Judicial District."[1] Plaintiff sued most of the same defendants in 2008, and that case was dismissed by District Judge David N. Hurd. *See Yagan v. Syracuse City Court, et al.,* 5:08-CV-1176.

---

[1] Although it appears from the docket sheet that this title is associated with defendant Barrett, it is Judge James Tormey whose title is "Administrative Judge for the Fifth Judicial District." He is not an "Administrative Law Judge" as plaintiff calls him.

Plaintiff's complaint in this action is quite confusing.  She begins by stating that she has been denied her right to due process and "habeas corpus" by the "state criminal courts." (Compl. ¶ 11, p.3).  She states that this denial "warrants Federal intervention." *Id.*  Plaintiff claims that the District Attorney and the "Judges" have shown "extreme hostility" and "animus" in previous court cases as well as "three ongoing criminal court cases." *Id.* Plaintiff states that she seeks federal court intervention to enjoin these state court proceedings so that plaintiff may vindicate her rights. (Compl. ¶ 12, p.3).  Plaintiff begins her story by stating that defendant Fitzpatrick and his assistants have prosecuted charges resulting from a "series" of false arrests. (Compl. ¶ 14 at p.3).  Plaintiff then discusses an "orchestrated" traffic stop that occurred on December of 2006, alleging that she has been falsely arrested and then denied her right to trial "months later." (Compl. ¶¶ 15-17).

Plaintiff appears to complain that the District Attorney was allowed to "prosecute" her for months, only to obtain an "interests of justice" dismissal of the charges from the court. (Compl. ¶ 18-19 at p.4).  Plaintiff believes that she has been denied due process because she should have the right to go to trial and be "adjudicated innocent." (Compl. ¶ 19 at p.4).  Plaintiff states that each time, the assistant district attorneys have invoked "CPL 170.30"[2] (Compl. ¶ 20 at p.4).  Plaintiff alleges that the

---

[2] New York Criminal Procedure Law section 170.30 is entitled "Motion to dismiss information, simplified information, prosecutor's information or misdemeanor complaint." N.Y. CRIM. PROC. LAW § 170.30.  The section outlines situations in which the *defendant*, not the prosecutor, may move to dismiss these charging instruments.  The court notes, however, that section 170.40 of the New York Criminal Procedure Law is the section that governs motions to dismiss "in the furtherance of justice." N.Y. CRIM. PROC. LAW § 170.40.  This motion may be made by the defendant, the prosecutor or the court. *Id.* § 170.40(2).  Plaintiff may have intended to refer to section

prosecutions are undertaken to "exact continuing duress, anxiety, trauma and fear."

Plaintiff claims that defendant Syracuse City Court Judge Stephen Dougherty and "months later," Judge Kevin Young, signed arrest warrants "purportedly for FTA"[3] in violation of plaintiff's Fourth Amendment rights. (Compl. ¶ 22).[4]  The first incident of which plaintiff complains occurred on April 11, 2006. *Id.*  Plaintiff complains that she was held overnight after the first warrant was issued. *Id.*  Other than stating that the second warrant was signed "months later," plaintiff does not give a date for the issuance of the second warrant, which she states was defective because it was "facially insufficient." *Id.*  At the end of this paragraph of the complaint, plaintiff requests "Federal intervention." *Id.*

Plaintiff has attached a variety of exhibits, consisting of papers and/or motions that plaintiff filed in state courts or letters of complaint sent to state court judges. (Compl. at pp.9-33, Ex. A-O).[5]  Without reciting the contents of each exhibit, this

---

170.40 in her complaint.

[3] Plaintiff does not indicate the meaning of this acronym, however, FTA likely stands for "Failure to Appear."

[4] Paragraph 21 spans three pages of the complaint and discusses an incident involving plaintiff's attempt on May 5, 2010, to enter the Federal Courthouse in Syracuse, New York to file this complaint, during which plaintiff complains that the court security officers would not allow her to enter the building with her four cases of "evidence." (Compl. ¶ 21 at pp.4-6).  Plaintiff states that this incident caused her such trauma that she was unable to file her entire complaint, and she filed the complaint "as is," but would return to amend within ten days. *Id.*  This entire discussion has nothing to do with plaintiff's claims.  There are no defendants mentioned in this "paragraph," and the section only acts to further confuse her statement of facts.

[5] Exhibit F is "missing," but is labeled "Bench Warrant issued by Judge Dougherty," and plaintiff indicates that it will be included at a later time.

court notes that Exhibit A is entitled "Writ of Prohibition," and is a document that plaintiff filed in Syracuse Criminal Court, informing the judges that, although plaintiff was informed that an arrest warrant had been issued, she sought a "stay of proceedings" because of her pending federal actions and her pending letter to the Honorable Dennis Jacobs of the Second Circuit Court of Appeals. (Compl. Ex. A). This Writ of Prohibition, dated February 22, 2010, also complains about incidents ranging from "false imprisonment" in 2002 and the "false imprisonment" in April 2006 to May 2009, when plaintiff alleges that her mother's car was improperly seized from its parking spot at the Bernadine Apartments by the Syracuse Police. *Id.*

The document that plaintiff filed in this court on May 18, 2010 consists of the first page of her complaint with two additional defendants and a recitation of events that began on May 11, 2010, when plaintiff was apparently held in custody for three days as the result of a bench warrant that was issued against her in October 2008 for failure to appear on a Posting Ordinance violation.[6] (Dkt. No. 3 at ¶¶ 3-35). Plaintiff was informed in February 2010 that a warrant had been issued from Syracuse City Court for failure to appear on the 2008 ordinance violation. In response to the notice, plaintiff sent the above-referenced "Writ of Prohibition" to the Syracuse City Court.[7]

---

[6] These facts are new, although tangentially related to plaintiff's original pleading since all of plaintiff's claims seem to be related to an alleged ongoing effort by the state court judges and the District Attorney to harass plaintiff. Due to the liberality with which *pro se* parties are treated, the court will just assume that in addition to moving for temporary injunctive relief, plaintiff is seeking to amend her complaint to add the new facts.

[7]The "Writ of Prohibition" looks like a complaint, listing the District Attorney, Judge Dougherty, Judge Tormey, and "judges presiding in [10] False Arrests and 5 Appeals/Article 78 Proceedings" as plaintiffs with Desiree Yagan as the sole defendant. (Dkt. No. 3, Ex. A).

In this Writ, plaintiff stated that she was aware of the arrest warrant, but sought a "stay of proceedings" apparently because plaintiff thought once a federal action was filed, the state court "is enjoined." *Id.*

In response to plaintiff's papers, she received a letter from City Court Judge James Cecile, dated February 25, 2010, stating that the court issued the bench warrant based on her failure to appear in court on October 31, 2008. (Dkt. No. 3, Ex. B). Judge Cecile acknowledged the receipt of plaintiff's document, referring to it as a motion to stay proceedings, but informed plaintiff that her papers were not in proper form and had not been served on the District Attorney's office. *Id.* Judge Cecile further informed plaintiff that, because of the deficiencies in her papers, the court "cannot consider the relief that you have requested." *Id.* The judge then suggested that plaintiff "might want to obtain assistance from an attorney" and that, in the meantime, the bench warrant will remain active." *Id.*

Plaintiff claims that she went to state court on May 10, 2010 to appear before Syracuse City Court Judge Vanessa Bogan on a "landlord tenant dispute,"[8] unrelated to the bench warrant. (Dkt. No. 3 at ¶ 4). Plaintiff states that she went to see Judge Cecile, or any other available judge, about the warrant, but was told to return in the morning because Judge Cecile was not available. (Dkt. No. 3 at ¶ 6). Plaintiff ultimately returned to state court on May 11, 2010, bringing with her one small, and four large briefcases. (Dkt. No. 3 at ¶ 9-10). At that time, plaintiff appeared before

---

[8] Although initially, plaintiff does not even describe this "dispute," it later becomes one of the main issues in this case.

Syracuse City Court Judge Karen Uplinger. (Dkt. No. 3 at ¶¶ 9-11).

Plaintiff claims that after waiting "some time," plaintiff was allowed to approach the bench, but Judge Uplinger did not give plaintiff time to challenge the basis for, or the validity of, the bench warrant. (Dkt. No. 3 at ¶¶ 11-12). Instead, plaintiff alleges that Judge Uplinger had plaintiff arrested and remanded to custody on $5,000.00 bail that plaintiff could not afford to pay. (Dkt. No. 3 at ¶ 12). Plaintiff states that she attempted to tell court personnel that her briefcases were filled with confidential documents that could not be placed in the custody of the District Attorney's Office, the Syracuse Police Department, or the "OCSD."[9] However, everyone she asked refused to tell her what was going to happen to her records. (Dkt. No. 3 at ¶ 14).

After her arrest, plaintiff was placed in a holding cell for the rest of the day, but because she could not make bail, she was placed into the BHU,[10] on the psychiatric floor in "Solitary Confinement" for the next three days. (Dkt. No. 3 at ¶¶ 15-17). Plaintiff alleges that because she had no money, she had to persuade another prisoner to use her identification to call the "Ministry" and speak to someone who agreed to make some telephone calls for plaintiff. (Dkt. No. 3 at ¶¶ 18-19). Plaintiff used her

---

[9] The court believes that "OCSD" refers to the Onondaga County Sheriff's Department.

[10] The court believes that "BHU" refers to the Behavioral Health Unit, also known as the Behavioral Health Pods, separate housing units at the Justice Center, providing medical and mental health assistance to inmates. *See* www.ongov.net/sheriff/housing.html.

"one call" on May 11, 2010, to telephone the court to notify the District Judge[11] that plaintiff had been taken into custody and feared additional constitutional violations. (Dkt. No. 3 at ¶ 20).  Plaintiff claims that during the three days that she was in custody, she endured "psychological torture in subhumane [sic] conditions." (Dkt. No. 3 at ¶ 21).  She was denied her glasses, her paperwork, and was visited only once by a social worker, named Loretta. (Dkt. No. 3 at ¶ 22).

Plaintiff claims that on May 13, 2010, Judge Cecile held a brief hearing and ordered the case to trial on May 14, 2010, "[f]ully aware that [plaintiff] was in solitary confinement [with] no glasses no records, no documents and not prepared." (Dkt. No. 3 at ¶ 23).  Judge Cecile refused to let plaintiff challenge the "alleged" failure to appear. *Id.*  Trial was held on the Posting Ordinance violation on May 14, 2010, and plaintiff alleges that Judge Cecile was hostile and forced plaintiff to attend the trial in handcuffs. (Dkt. No. 3 at ¶¶ 30-31).  Plaintiff claims that she had no time to prepare a defense and was taken directly from solitary confinement to the courtroom. (Dkt. No. 3 at ¶ 31).

Plaintiff describes the testimony of the officer who issued the ticket for the Posting Ordinance violation, but who denied recalling the name of other officers involved in detaining plaintiff. (Dkt. No. 3 at ¶¶ 32-33).  Judge Cecile found plaintiff guilty of the violation and sentenced plaintiff to "time served." (Dkt. No. 3 at ¶ 34). Plaintiff states that she told the judge she would appeal the trial, her confinement, and

---

[11] In her motion, plaintiff states that on May 11, 2010, she called Chief Judge Norman Mordue, however, the docket sheet indicates that on May 17, 2010, plaintiff called Senior Judge McCurn's chambers.  Senior Judge McCurn is the judge assigned to this case.

the seizure of her personal property. (Dkt. No. 3 at ¶ 34).  Plaintiff states she was released later that afternoon. (Dkt. No. 3 at ¶ 35).  Plaintiff claims that when she was released, she learned that her property had been seized and placed in the custody of the District Attorney under supervision of the Syracuse City Police for "investigatory purpose[s]." (Dkt. No. 3 at ¶ 35 & Ex. N).

Plaintiff claims that Judges Cecile and Uplinger violated her rights under the Fourth, Sixth, and Eighth Amendments. (Dkt. No. 3 at ¶ 36).  Unfortunately, after plaintiff completed the factual statement relative to her recent custody, she began discussing incidents occurring in 2006, and refers to two "illegal bench warrants," neither of which is the bench warrant that issued in 2008 for the Posting Ordinance violation. (Dkt. No. 3 at ¶¶ 40-41).   Plaintiff states that she seeks a declaratory judgment that no bench warrants shall issue on a "simplified information," without a supporting deposition pursuant to section 100.25 of the New York Criminal Procedure Law. (Dkt. No. 3 at p.12).  Plaintiff asks for a federal injunction against City Court and an evidentiary hearing on the 2006 bench warrants, the May 11, 2010 arrest, the three-day custody in BHU, and the seizure of her personal property. *Id.*

On May 21, 2010, plaintiff filed a "supplement" to her emergency motion, mixing facts regarding her recent custody with her complaints about the 2006 bench warrants and how she was treated at that time. (Dkt. No. 5).  Plaintiff essentially requests that this court enjoin the state court from further violations of her constitutional rights by the various defendant state court judges.  Plaintiff also appears to again request an evidentiary hearing to discuss the 2006 warrants.

9

On May 24, 2010, plaintiff filed another "Supplement." (Dkt. No. 6).  In this document, plaintiff changes the focus of her allegations and complains about the proceeding in "Landlord Tenant Court" in which the judge called plaintiff a "trespasser." (Dkt. No. 6 at 1).  Plaintiff seeks a "TRO" to stop the eviction or the "illegal lockout" from what she believes is her apartment at the Bernadine Apartments. (Dkt. No. 6).  Plaintiff has attached documents that she filed in Syracuse City Court and now appears to be petitioning for removal of the state court action. (Dkt. No. 6 at 1, 3).  Plaintiff claims that although she was supposed to appear before City Court Judge Vanessa Bogan on the landlord-tenant issue, she was forced to appear before Judge Cecile, who recently forced her to trial and found her guilty of the Posting Ordinance violation.  Plaintiff believes that the appearance before Judge Cecile was "orchestrated," and that Judge Cecile should have recused himself. (Dkt. No. 6 at 6).

Plaintiff's May 28, 2010 submission, again labeled a TRO, is basically an additional recitation of the events surrounding her recent arrest and her recent appearances in Syracuse City Court.  She repeats previous statements regarding bench warrants, her eviction, and alleged illegal and harassing conduct by the administrators of the apartment complex in which she lived with her late mother.  Plaintiff has added "ADA Geoffrey Ciereck" to the caption of the document. (Dkt. No. 7 at 1).  This individual is not mentioned anywhere in the original complaint or in any of the statements of fact that plaintiff has filed in this particular case.  In this application for a TRO, plaintiff now mentions Howard Jenkins, the administrator of the Bernadine Apartments, where plaintiff and her mother lived until her mother's death. (Dkt. No. 7

10

at 8).  Plaintiff has attached twenty six pages of "exhibits" to this document. (Dkt. No. 7-1).

Plaintiff's last three "Emergency Motions" contain a variety of allegations, including additional facts regarding her "lockout" and eventual eviction. (Dkt. Nos. 8-10, 12).  Her last motion states that her rolling briefcase filled with documents was stolen on June 5, 2010, and she needs a TRO because of this theft.  Plaintiff comes to the Northern District Clerk's Office nearly every day to "amend" or "supplement" her papers, making it very difficult for the court to rule on her requests.  Plaintiff often attaches, as exhibits, portions of documents that are somehow related to current or prior claims.  Plaintiff's most recent motions focus on the eviction proceeding in Housing Court and the warrant of eviction issued by Judge Cecile.

For the following reasons, this court finds that plaintiff is not entitled to preliminary or any other injunctive relief based on the alleged actions of the defendants.  The court will also recommend that plaintiff's complaint be dismissed and that plaintiff be afforded the opportunity to show cause why she should not be barred from filing further actions without leave of court.

## II.   *In Forma Pauperis* ("IFP")

Plaintiff has filed an application to proceed IFP. (Dkt. No. 2). Pursuant to 28 U.S.C. § 1915(a)(1), the court may authorize the commencement, prosecution, or defense of any suit, action or proceeding without the pre-payment of fees.  The individual seeking permission to proceed IFP must file an affidavit which includes a statement of all assets, showing that the individual is unable to pay the fees or give

11

security therefor. *Id.*  The same section, however, states that this determination is "subject to subsection (b)." *Id.*  Subsection (b) provides that notwithstanding any filing fee or portion of the fee that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue, or the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  In determining whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  The Court will now turn to a consideration of the plaintiff's complaint under the above standards.

## III.   **Three Judge Panel**

Plaintiff states in the caption of her complaint that she is seeking a "Three Judge Court."  This is not the first time that plaintiff has requested this relief.  She made the

same request in *Yagan v. Syracuse City Court Judges Fifth Judicial District*, 5:08-CV-1176.  In dismissing that action, District Judge Hurd pointed out to plaintiff that, pursuant to 28 U.S.C. § 2284(a), a three-judge panel is convened when "otherwise required by Act of Congress" or when an action is filed challenging the apportionment of congressional districts or the apportionment of any statewide legislative body. *Yagan v. Syracuse City Court Judges Fifth Judicial District*, 5:08-CV-1176 (N.D.N.Y. Dec. 11, 2008) (Dkt. No. 8 at p.7). When an application for a three-judge panel is presented to the district court, the court must determine whether constitutional claim is substantial; whether the complaint alleges a basis for equitable relief; and whether the cases as presented otherwise comes within the statutory requirements. *Id.* (citing *Loeber v. Spargo*, 04-CV-1193, 2008 U.S. Dist. LEXIS 1416 at *6 (N.D.N.Y. Jan. 8, 2008) (citing *Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 715 (1962) (discussing a prior version of § 2284)).

In this case, plaintiff has cited no reason for this court to recommend convening a three-judge panel.  There is no claim involving apportionment of constitutional districts or statewide legislative bodies.  Although she asks for "injunctive relief" and is purportedly raising constitutional issues, these facts alone do not constitute adequate reasons to convene a three-judge panel.  Most actions brought under section 1983 involve constitutional claims. 42 U.S.C. § 1983.  In fact, as discussed below, plaintiff has essentially repeated many of the same "claims" that she has already made and that have already been dismissed in prior actions in this court.  Thus, this court recommends that plaintiff's request for a three-judge court be denied.

## IV.    Injunctive Relief

Plaintiff states in several of her documents that she is bringing an *ex parte*
motion for a TRO.  Rule 65 governs applications for temporary injunctive relief.  The
standard for either a temporary restraining order or a preliminary injunction is
well-settled and requires a plaintiff to demonstrate irreparable harm, and either a
likelihood of success on the merits or sufficiently serious questions going to the merits
such as to make them a fair ground for litigation and a balance of hardships tipping
decidedly in the plaintiff's favor. *See Leibowitz v. Smith Barney*, 863 F. Supp. 171,
173 (S.D.N.Y. 1994) (citing *inter alia Local 1814, Int'l Longshoremen's Assn.
AFL-CIO v. New York Shipping Assn., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)).

In this case, plaintiff has asked the court to enjoin Syracuse City Court from
issuing bench warrants without "supporting depositions," purportedly in violation of
section 100.25 of the New York Criminal Procedure Law.[12] (Dkt. No. 3 at 12).
Plaintiff would also apparently like the court to enjoin "future" criminal proceedings
against her. (Dkt. No. 3-1 at 1).  She requests an evidentiary hearing in federal court
with respect to the two bench warrants that were issued against her in 2006. (Dkt. No.
3 at 12).

Plaintiff also asks this court to vacate the warrant of eviction, and in one of her

---

[12] Section 100.25 of the New York Criminal Procedure Law articulates the "form and content"
of a simplified information and provides that a defendant charged by a simplified information has the
right to a supporting deposition "upon a timely request." N.Y. CRIM. PROC. LAW § 100.25(1), (2).
This section also describes what constitutes a "timely" request. *Id.*  When at least one of the charges
in a simplified information is a misdemeanor, the court may allow the defendant's request to be made
beyond the thirty day period. *Id.* § 100.25(3).

motions, she states that she wishes to remove the City Court action to Federal Court. (Dkt. No. 6 at 1).  Finally, in her latest motions for temporary injunctive relief, plaintiff again requests that the court vacate the "warrant of eviction," and she seeks a stay of all state court proceedings. (Dkt. No. 7 at 12; Dkt. Nos. 8, 9, 12).  Plaintiff alleges that the theft of her rolling briefcase in a Walmart parking lot in Camillus, New York requires that this court vacate the warrant of eviction and "reinstate" plaintiff to her apartment so she may have access to her records, and so she may be able to present her case. (Dkt. No. 12 at 10).

## A.    Eviction Proceedings

This court notes that on April 20, 2010, Senior District Judge McCurn dismissed one of plaintiff's prior actions, wherein she requested an injunction against, among other individuals, Howard Jenkins, the Administrator of the Bernadine Apartments. *Yagan v. Jenkins, et al.*, 5:10-CV-453 (N.D.N.Y. April 20, 2010).[13]  In 5:10-CV-453, plaintiff was requesting an injunction, related to the current eviction proceeding, to prevent what plaintiff referred to as an "illegal lock out" by the management of the Bernadine Apartments.  When plaintiff filed this action on May 5, 2010, she had not appeared in the Housing Court proceeding.  However, now, the "summary holdover" proceeding has been completed, and plaintiff is seeking to vacate the "warrant of eviction" issued by Judge Cecile as a result of that proceeding.

---

[13] (Dkt. No. 7 in 5:10-CV-453).  Plaintiff has filed a notice of appeal to the Second Circuit in that case, and the plaintiff has been assigned Case Number 10-1456 in the Second Circuit. (Dkt. No. 8 and Text Entry dated May 25, 2010).

In this case, the defendants are state court judges,[14] rather than the administrators of the apartment complex in which plaintiff lived with her late mother.[15]   Since the denial of plaintiff's TRO regarding the allegedly illegal lockout in 5:10-CV-453 is currently on appeal to the Second Circuit, this court may not revisit the claim. *See* 28 U.S.C. § 1291; *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam) (filing of a proper notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal).   To the extent that this case is different than plaintiff's previous action, this court will analyze the issues presented.

Plaintiff cites 28 U.S.C. § 2283 as the basis for her request for injunctive relief. Section 2283 is actually known as the "Anti-Injunction Act."   The law is well-settled that with rare exceptions, a federal court may not enjoin pending state court proceedings. 28 U.S.C. § 2283.   The Act is prohibits enjoining any state court proceeding, unless one of the exceptions that are specifically described in the statute apply. *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977).

The Anti-Injunction statute provides that exceptions to the statute arise when the injunction is authorized by an Act of Congress, when the injunction is necessary in aid of the federal court's jurisdiction, or when injunctive relief is necessary to protect

---

[14] Even assuming that this court could do anything for plaintiff, clearly, the only judge that was actually involved in issuing the eviction warrant was Judge Cecile.   None of the other judges named by plaintiff are responsible for the eviction warrant.

[15] The court does note that in plaintiff's June 3, 2010 submission, she has also added Howard Jenkins, the Bernadine Apartments administrator to the caption of her papers. (Dkt. No. 8).

or effectuate a federal court judgment. *See Bess v. Spitzer*, 459 F. Supp. 2d 191, 201

(E.D.N.Y. 2006) (citing *Vendo Co.*, 433 U.S. at 630).  However, the court must

construe these exceptions narrowly. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140,

146 (1988).  The court does not have inherent power to enjoin state court proceedings

just because those proceedings may interfere with a federally protected right, even if

that interference is clear. *Id.* at 140-50.

   In this case the proceeding in Housing Court is now over, and Judge Cecile has

issued a warrant of eviction.  There is no pending state court proceeding to enjoin.

Thus, the Anti-Injunction Act no longer applies.  For various reasons, plaintiff wishes

this court to vacate the warrant of eviction, issued by Judge Cecile.  The warrant

apparently authorizes the removal of plaintiff's belongings from the apartment that she

shared with her mother prior to her mother's death.  These belongings have apparently

remained in the apartment since plaintiff was locked out in April.

   Although plaintiff's papers are very unclear, she apparently contends that Judge

Cecile did not afford plaintiff "due process" prior to issuing the warrant.  Plaintiff

claims that Judge Cecile found plaintiff to be a "squatter" in the apartment.  Plaintiff

also claims that Judge Cecile should have recused himself from presiding over the

Housing Court proceeding because he was biased against plaintiff, having found her

guilty of the Posting Ordinance only days prior to presiding over the Housing Court

case.

   Plaintiff purports to bring this action under 42 U.S.C. § 1983.  Plaintiff

complains that the state court did not afford her due process and argues that she was

actually a "tenant" in the apartment.  She claims the management is estopped from evicting her because the management knew that she was residing in the apartment and had threatened to evict plaintiff's mother in 2009 because of plaintiff's residence in the apartment, the management did not initiate any formal eviction proceeding at that time.  Plaintiff claims that because she was a tenant, neither the management of the Bernadine Apartments, nor the court, had any authority to deprive her of her apartment.  Plaintiff also claims that because she has been locked out of the apartment since April 2010, she is not "in possession" of the apartment and cannot be evicted. Basically, plaintiff wishes the federal court to consider her defenses to the state court eviction proceeding.  Plaintiff complains that Judge Cecile did not allow her to present evidence and assert a "cross-claim" of illegal lockout.  She alleges that Judge Cecile should have recused himself since he had recently found plaintiff guilty in a criminal action.

If plaintiff in this case believed that Judge Cecile denied her due process, made an incorrect decision, or was biased against her,[16] plaintiff would have been free to appeal the Housing Court determination in state court.  New York courts retain the power to vacate an eviction warrant for good cause prior to its execution. *See* N.Y. REAL PROP. ACTS. § 749(3).  In appropriate circumstances, a New York court has the power to reinstate the tenancy after the execution of the warrant. *Lang v. Pataki*, 271 A.D.2d 375, 376, 707 N.Y.S.2d 90 (1st Dep't 2000) (citation omitted).  Plaintiff in this

---

[16] The court would note that generally, judicial rulings alone will almost never constitute a valid basis for a bias or partiality motion to disqualify a judge. *See e.g. Jones v. City of Buffalo*, 867 F. Supp. 1155, 1162 (W.D.N.Y 1994).

case could also have brought an illegal lockout proceeding in state court. *See Zaidman v. Babbage*, 9 Misc. 3d 1111(A), 808 N.Y.S.2d 921 (table), 2004 WL 3524730 (Crim. Ct. NY Cty. July 28, 2004) (unpublished decision).  New York law provides specific procedures for summary proceedings in Article 7 of the New York Real Property Actions and Proceedings Law. N.Y. REAL PROP. ACTS. §§ 701 *et seq.*  Section 713 specifically provides for a proceeding where "no landlord-tenant relationship exists." *Id.* § 713(1)-(11).  Appeals of summary proceedings are available to the losing party, and plaintiff cannot "dress up an appeal of [her] Housing Court case as a § 1983 claim to provide a jurisdictional basis to bring this action in federal court and relitigate [her] Housing Court claims." *See Kitchen v. Phipps Houses Grp. of Cos.*, No. 08 Civ. 4296, 2009 WL 290470 at *3, 5 (S.D.N.Y. Feb. 5, 2009) (federal court action is not a substitute for appeal in state court), *affd*, No. 09-1143, slip op. (2d Cir. June 9, 2010). Plaintiff essentially claims that she is a tenant, notwithstanding the death of her mother, who was the legal resident of the apartment, and with whom the management had a lease.[17]

---

[17] Bernadine Apartment Complex is a "Retirement Community" run by Loretto, a private, non-profit, eldercare provider. *See Yagan v. Jenkins*, 5:10-CV-453 (N.D.N.Y. April 20, 2010) (Dkt. No. 7 at 2 & n.2).  There are "age requirements" at this retirement community that plaintiff does not meet. *See* Pl. Ex. A (Dkt. No. 9 at 11) (letter from Mr. Jenkins, dated May 15, 2009, explaining why plaintiff's mother was in violation of her lease by letting plaintiff reside with her).  In 5:10-CV-453, Judge McCurn held that Howard Jenkins did not act under color of state law for purposes of section 1983.  A private party who conspires with a state official, or who is a willful participant in a joint activity with the State or its agents to violate a plaintiff's constitutional rights, is acting under color of state law and subject to liability under section 1983. *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005).  However, plaintiff's conclusory attempt to allege that Mr. Jenkins conspired with the Syracuse Police when he had plaintiff's car towed do not convert his private actions regarding plaintiff's mother's apartment into actions "under color of state law." *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (conclusory allegations are insufficient to state a claim for relief under

Plaintiff argues that the management acquiesced to her tenancy because they knew she was living in the apartment and did not go through with an eviction of her mother that was threatened in 2009.  The issue of who is or is not a tenant under New York law is for the New York State courts to determine, regardless of the fact that plaintiff has completely confused the issue by continuing to connect her current problems with perceived conspiracies by state court judges, prosecutors, and other individuals, dating back to 2002.

Thus, plaintiff cannot establish a likelihood of success on the merits or even serious questions going to the merits and a balance of hardships tipping in her favor. Accordingly, this court will recommend a denial of plaintiff's motions for injunctive relief relative to her eviction claims.[18]  Since plaintiff's claim for injunctive relief has no merit, and the only defendants related to the eviction issue are state court judges, plaintiff's complaint may be dismissed in its entirety.[19]  Finally, because the summary proceeding in Housing Court is over, plaintiff also cannot "remove" the landlord-tenant action to Federal Court.

---

section 1983).  Senior Judge McCurn also stated in a footnote that it appears that the court may lack subject matter jurisdiction over state eviction actions or other landlord-tenant matters. *See* 5:10-CV-453 (Dkt. No. 7 at 7 n.6 (citing *Senior v. Univ. Tower Assoc.*, No. 08-CV-387, 2008 WL 649713 at *3 (E.D.N.Y. March 10, 2008).

[18] The court will assume, without deciding, that the threat of eviction and losing one's home is sufficient to establish the irreparable harm prong of the test for injunctive relief. *See McNeil v. New York City Housing Authority*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989).

[19] Plaintiff does not appear to ask for damages, and even if she did ask for damages, the defendant Judges would be entitled to absolute immunity since any actions they took were within their jurisdiction as state court judges.  A judge is immune from suit for challenged actions relating to the exercise of his or her judicial functions. *Glavin v. Restaino*, 210 Fed. Appx. 122, 123 (2d Cir. 2006)(citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).

20

B.     **Criminal Cases**

Plaintiff began this lawsuit by naming a variety of judges, the Onondaga County District Attorney, and J. Patrick Barrett. (Dkt. No. 1 at 1).  None of the defendants that plaintiff originally named in the complaint had anything to do with her current issues.[20]  These were all individuals who plaintiff named in previous cases, and she continues to make the same claims against them that she has made in the past.  All of plaintiff's claims regarding the incidents between 2002 and 2009 have already been considered and dismissed with prejudice by both the District Court and by the Second Circuit.  In *Yagan v. Fitzpatrick, et al.*, 5:08-CV-1100, *Yagan v. Syracuse City Court Judges Fifth Judicial District*, 5:08-CV-1176, (DNH/GJD), *Yagan v. Fitzpatrick, et al.,* 5:09-CV-776 (DNH/GJD), and *Yagan v. Driscoll, et al.*, 5:09-CV-763), plaintiff has challenged various aspects of what plaintiff believes to be harassment by judges, prosecutors, and others with whom plaintiff has had contact through the years. Plaintiff continues to assert that everyone, including all the judges of the Fifth Judicial District have conspired against her, have placed her in mental observation for improper reasons, and have generally harassed her.  To the extent that plaintiff repeats these claims in this action, they may be dismissed as having been brought and dismissed more than once.

Plaintiff's most recent encounter with the State criminal courts was in May of

---

[20] Plaintiff added Judge Cecile in her May 18, 2010 documents. (Dkt. No. 3).

2010, after she appeared before City Court Judge Bogan[21] on the landlord tenant issue. Plaintiff was made aware by letter from Judge Cecile, dated February 25, 2010, that there was an outstanding bench warrant for her arrest based on a failure to appear in 2008. (Dkt. No. 3-2 at 5) (copy of Judge Cecile's letter).  Plaintiff states that while she was in the courthouse addressing her landlord-tenant issue, she attempted to handle the outstanding bench warrant by asking to see Judge Cecile.  Plaintiff was told that she had to return the next day.  Upon her return, she appeared before Judge Uplinger, and the judge had her arrested, purportedly without permission to speak in her own defense.

Plaintiff claims that she was unable to make bail and spent the next three days in the Behavioral Health Unit.  When plaintiff next appeared in court, Judge Cecile scheduled her trial on the Posting Ordinance violation the same day.  Plaintiff had no glasses and claims that she was not able to prepare her case.  She was found guilty after the testimony of the officer who gave her the violation notice.  Plaintiff was sentenced to time-served and released the same day.  Clearly, there is nothing for this court to enjoin regarding plaintiff's recent criminal action, which has been completed. It is unclear whether plaintiff has, or intends to appeal, this conviction.

Plaintiff seeks an injunction to prevent state courts from issuing bench warrants without supporting depositions, and requests an vague injunction requiring the state court to abide by its own law.  Plaintiff's conclusory allegation that she will be subject

---

[21] Plaintiff has attempted to add Judges Bogan, Cecile, and Uplinger as defendants.  Since this court is recommending dismissal of the complaint on the merits and with prejudice, her "motion" to add these defendants is moot. (Dkt. No. 4).

to unwarranted or harassing criminal proceedings in the future is completely unsubstantiated and does not state any claim for relief.  Clearly, this court may not give plaintiff an "evidentiary hearing" to review bench warrants that were issued in 2006.[22]  Thus, plaintiff's request for injunctive relief as well as her entire complaint regarding her criminal case or cases should be dismissed as frivolous and for failure to state a claim.

## VI.   **Abusive Litigant**

In addition to reviewing actions to determine whether plaintiffs may proceed *in forma pauperis*, the court also has "the power and the obligation to protect the public and the efficient administration of justice from individuals who have a 'history of litigation entailing 'vexation, harassment and needless expense to [other parties] and 'an unnecessary burden on the courts and their supporting personnel.'" *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000)(quoting *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984)) (alteration in original).

Under 28 U.S.C. § 1651, the court may sanction a prolific litigant who abuses the judicial process by repeatedly suing defendants on meritless grounds and enjoin her from pursuing further litigation without leave of court.  *Davey v. Dolan*, 453 F. Supp. 2d 749, 755 (S.D.N.Y. 2006) (citations omitted).  The issuance of a filing injunction is appropriate when a plaintiff abuses court process to harass and annoy others with "meritless, frivolous, vexations or repetitive . . . proceedings." *Id.* (quoting

---

[22] Plaintiff complained about these bench warrants in her prior cases that have all been dismissed.

23

*In re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir. 1991) (per curiam)) (omission in original).  An injunction will prevent further undue burdens on judicial resources and "hapless" defendants. *Id.* at 756 (citation omitted).  In determining whether to enjoin a plaintiff from filing further actions without leave of court, the district court should consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexations, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 756 (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

A review of this plaintiff's litigation history show that almost every case that she has brought has been held to be frivolous or duplicative.  This court has reviewed plaintiff's litigation history and is extremely concerned, not only with her continuous filing of repetitive and frivolous litigation, but with her recent behavior in the federal courthouse.  Although plaintiff states that she is seeking "justice," she continues to file the same claims against the same individuals even after she has been told by the District Court and the Second Circuit that those claims are meritless and/or filed against individuals that have immunity from suit.  Thus, plaintiff continues to file cases where she has no rational basis to believe that she will prevail.

The court has attempted to be as patient as possible, given plaintiff's pro se status.  However, it appears that plaintiff continuing to file abusive litigation and when

she files an action, she returns to the court almost daily to file "amendments," "supplements," and requests for "emergency" relief.  The plaintiff has not been allowed to cause needless expense for defendants because the court has not allowed these meritless complaints and motions for injunctive relief to be served.  However, the plaintiff has certainly posed an unnecessary burden on the court and its staff.  This is the seventh case that plaintiff has filed in the Northern District of New York since 2008.  Plaintiff has been allowed to spend countless hours in the Clerk's Office and has made veiled threats to employees when plaintiff believes that the court is not acting quickly enough to suit her.  Her constant "amendments" have delayed her own action since the court has carefully reviewed each document that she has filed.  This behavior cannot be allowed to continue.

Finally, the court must determine whether sanctions other than barring plaintiff from filing further actions without court approval would be appropriate.  The court has considered other sanctions, but none which would be adequate in this plaintiff's case. This court is well aware that the Second Circuit has an unequivocal rule that, in order to impose filing restrictions on a litigant, that litigant must have notice that his behavior will result in an injunction and must have an opportunity to be heard regarding that sanction. *See Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998). *See also Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005) (notice and an opportunity to be heard regarding possible filing injunction comports with due process).

Plaintiff in this case has not yet been afforded such a notice.  This Report-

Recommendation will act as plaintiff's notice that her conduct has reached the point that the court may consider barring her from bringing further actions without the court's prior review and permission to file. This court will also recommend that Senior Judge McCurn issue an order to show cause why this plaintiff should not be so barred. The opportunity to be heard may be either in writing or in person, depending upon Senior Judge McCurn's schedule.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED ONLY FOR PURPOSES OF FILING THIS COMPLAINT**, and it is

**RECOMMENDED**, that plaintiff's motions for "emergency" temporary restraining orders (Dkt. Nos. 3, 4, 7, 8, 9, 12) be **DENIED**, and it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), and it is

**RECOMMENDED**, that if the District Court approves this recommendation, plaintiff be warned that her conduct may result in an order barring her from filing further actions without court approval, and it is further

**RECOMMENDED**, that if the District Court approves this recommendation, it be **CERTIFIED**, that any appeal from these matters would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and it is

**RECOMMENDED**, that if the District Court approves this recommendation, that Judge McCurn issue an order to show cause, giving plaintiff an opportunity by a certain date, either in writing or in person, to explain why she should not be barred

26

from further filings without court permission, and it is

ORDERED, that plaintiff's motion to add two parties to the action (Dkt. No. 4) is **DENIED as MOOT**, and it is further

ORDERED, that the Clerk serve a copy of this Order on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 9, 2010

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

27